Thank you, Your Honor. Good morning, and may it please the Court. My name is Peter Hosharian, and I'll be presenting oral arguments on behalf of the petitioner in the Manukyan matter. The recent decision that was reached by the Board of Immigration Appeals in the matter of RKK really gives a blueprint to the immigration judge on how to handle cases that have interproceeding similarities. And it also gives this Court and any reviewing court a blueprint on how to analyze those types of cases in regard to adverse credibility determinations. They came up with a three-pronged test. The first view... So that test was articulated after this case was decided. Do you have any authority that says that if the BIA implements, essentially, procedures for IJs to follow in a case after the IJ already decided a case, that we can then say, if those procedures weren't followed, that we have to send the case back? How is that our role as a court, to sort of police what's happening within this agency? Well, I don't have any particular case law that's directly on that point, Your Honor. However, this was a case that was reached by the Board of Immigration Appeals. There was no previous case law on, and the matter of RKK specifically states that there was no previous case law on what to follow as far as interproceeding similarities, as far as the adverse credibility determinations. Are those procedures that were announced in RKK required as a matter of due process? I believe so, because the language specifically states that after the three prongs are met, that each of these steps must be done on the record. That just means they're requiring a procedure, which is what the Board can do within its administrative powers. That's correct, and I think that does put the burden on the immigration court to follow, or the immigration judge to follow these procedural standards, to preserve the fairness of the proceedings. Both cases, if you look at the matter of RKK, and you look at the case before you here today, both cases are very similar in the fact that they have two declarations of two different asylum matters, and both are declarations of brothers in the case. In RKK, though, the declarations could have both been true, and here the statements could not really have both been true, right, because they were inconsistent with each other. Well, that is a separate issue as far as that was also a credibility determination with the other matters that the judge said that weighed on the applicant's adverse credibility. What was not addressed in this case was the similarities and the adverse credibility that those similarities might have, and I think that when you get to the third prong of the test, the totality of circumstances, both at that point, if you don't have a clear explanation as to why the similarities are considered to be adverse, then you're not making a decision based on the totality of the circumstances. And if the judge is weighing her adverse credibility determination as making this a factor of her adverse credibility determination, and that heightens her doubts as to the credibility of the respondent, then I believe these procedural rules should be followed so that the judge can make a determination based on all the evidence before her, and I think that's what this case is really trying to do. Well, I thought that the harm that the board was trying to get at was the assumption that because people come up with the same story that they must be lying. So it's the unexplained similarities that are the problem, and you ought to have a chance to explain them. What we have here is inconsistencies, which seems to be completely different. And not only that, but there are other inconsistencies that are pointed out in the record. So I don't really see why we would have to send this back and tell them to follow RKK. Well, there were inconsistencies, and there were also similarities that were discussed by the immigration court. But in RKK, the similarities included things like the same typos, the same spelling mistakes. It looked like someone had taken the same story and told it twice. But other than the fact that it had the same typos and the same words, there would have been no reason to think these two stories could not both be true. Here, we don't have the same typos and the like. We have two stories about the same incident, and they're different. And so, yes, they're similar in the sense that they say sort of the same thing, but because they're about two brothers and they tell the same thing, but from each perspective, so they become inconsistent with each other. The real problem here is that they're inconsistent, isn't it? I mean, they can't both have been the only one who had their nose broken. Well, I believe the immigration judge did mention that there were similarities that she was concerned with in the decision. And I think that needs to be addressed, not only the inconsistencies. Okay. Do you have an argument? Let's say that we conclude that we can't hold any potential RKK error against the government in this case. I wonder if you have an argument that the IJ's decision is nonetheless so riddled with errors in connection with the adverse credibility determination that we can't be confident that had she not made those errors, the same result would have been reached. I mean, there was this emphasis on the failure of the psychiatrist to come testify when she never said she needed the psychiatrist to come testify. There was this emphasis, I mean, the very first thing that she raised in her ruling was this distinction between 1997 and 1999 about when he was stabbed, which she didn't give him notice to address, the opportunity to address that, and it really seems like an exceedingly minor nitpicky type of inconsistency. She seemed to be wrong about the university thing and how long he attended the university. She seemed to believe that the brother's testimony at the hearing was inconsistent with Mnuchin's testimony at the hearing, and the BIA seemed to believe that also, and I think that's probably wrong. So putting aside the RKK matter for a moment, do you think it's possible that although there were certain problems with Mnuchin's testimony, to put it mildly, that because her ruling was so riddled with errors that we can't be confident that a reasonable immigration judge would have reached the same ruling had those errors not been made? Yes, and I agree with you, Your Honor. There's no question about the fact that there was problems with the adverse credibility conclusions reached by the judge as far as, as you said, nitpicking with dates that were pretty much almost at the same time. The respondent in this case had said that he had incurred head trauma, and he was asked to remember things that occurred six, seven years prior to his testimony. That, in and of itself, the case could be remanded notwithstanding the matter of RKK. There was also a good deal of reliance on demeanor, was there not? There was, Your Honor, and I again bring it to the totality of the circumstances. If the judge thought that the inner proceeding similarities or whatever had an adverse effect on the credibility, then that may have heightened or elevated her suspicions as to the credibility of the respondent. And I'll reserve the rest of my time for rebuttal. Thank you.  Lindsay Corliss for the respondent. This court should deny the petition for review and uphold the agency's decisions denying asylum, withholding of removal, and cap protection. Although the similarities between petitioner's affidavit in this case and his brother's affidavit in a prior proceeding, the similarities between them became an issue in the immigration judge's decision. This court should not remand proceedings pursuant to RKK. The reason for that is that the board upheld several specific cogent reasons based solely on petitioner's proceedings and not the similarities between his proceedings and his brother's proceedings when deciding that the petitioner failed to establish his own credibility. And those specific cogent reasons are evident in the record and they're proper under the REAL ID Act. And if I may, I will discuss each in turn. Could I just ask you, though, say there were fewer inconsistencies and the similarity issue was a big factor. Let's just take that as a hypothetical. I know you're going to say that's not really what happened. But say that was the case. Would we then as a court have the role of remanding because of the RKK error? If the board had upheld the adverse credibility decision because of the inter-proceeding similarities and the immigration judge had not followed the procedures in RKK, then I would agree that this court should remand proceedings to allow the board to direct the immigration judge to follow those procedures. And do you have a case in which we've done that? I mean, it sort of seems like that's logical, but I actually had trouble figuring out when a procedure is adopted after a proceeding, what our authority is to fix that. I don't know of a case dealing with that. I know that this case only came out in September, and I'm not certain if this court has addressed it. So you don't have a position with respect to whether the government doesn't have a position as to whether RKK applies to cases that are still in the system? Unfortunately, I don't have a specific position on cases in general. However, I can say in this case, even if we were to assume that the board had made that finding, which I don't think that the board did in this case, but had the board made that finding, you can look at the procedures that are outlined in RKK, and you can see that the immigration judge substantially complied with those procedures. Did the immigration judge give Mnookin notice that she was going to rely on the distinction or the similarity between the two statements? She did not specifically state to him that she was going to rely on it. However, he was aware of the similarities between the two documents, and he had that awareness. Did he have both documents? I couldn't tell whether both documents were even in the record. Both documents were not actually submitted into the record. The DHS counsel was using it solely as an impeachment document for the witness testimony. However, Petitioner's own counsel supplied the DHS counsel with the brother's affidavit herself. Can we tell that from the record? You can. It's cited in my letter brief, the actual page number, where Petitioner's attorney states that she's giving the DHS attorney the brother's asylum packet, and she mentions that the brother had waived confidentiality in that issue. That happened four years prior to Petitioner's proceedings. I'm sorry. I know. I see it in your letter. You said he confirmed that he provided the government with his file. You're saying that that includes the statement that was similar? Yes. It's his asylum file, so it would have included the asylum affidavit that would have been used. You're saying the lawyer for Mr. Mnookin, our Mr. Mnookin, confirmed that he provided the brother's file to the government in these proceedings? Yes. So both Petitioner and the brother were on notice that this would become an issue and that it would be used for impeachment purposes when he used his brother as a witness. So he had meaningful notice there. He also had meaningful notice during proceedings because Petitioner was present for his brother's testimony, was watching his brother's testimony as the brother was being cross-examined regarding the substantial similarities, and the substantial similarities were actually read into the record at that point. DHS counsel read it out loud. So both parties were aware. At the end of Petitioner's brother's testimony, the immigration judge specifically asked both parties if they had any more questions or witnesses. Both sides declined. She also asked if there was any more evidence that the parties wished to submit, and again, both parties declined. So they didn't ask for continuance to get more evidence to supply an answer about these inter-proceeding similarities. Could you respond to Judge Chavria's question to your opponent about the other errors that the IJ made and whether those taint this whole decision? Yes. So the board upheld, based on certain aspects of the testimony that the immigration judge addressed, but not on every one. And the ones that they did... Forgive me, just a quick clarification question. Are we examining the IJ's decision, or are we examining the BIA's ruling upholding the IJ's decision? We're examining the board's decision, except to the extent that it specifically is addressing or adopting the immigration judge's decision. We're reviewing the board's decision. Yes. So the first inconsistency that the board noted was inconsistencies regarding whether Petitioner was harmed in 2004 or 2005. Now, Petitioner had submitted an affidavit stating that he had been injured in April of 2005 and in May of 2005. However, he also submitted medical documents stating that he had been injured in April of 2005 and May of 2004. Now, whether a date falls in one year or another may matter a lot in some cases and may not matter too much in other cases. In this case, Petitioner left his home country in June of 2005. So we would be discussing either something that happened a few weeks before he left or more than a year before he left. So whether or not he has a well-founded fear is implicated in that time period. So that's why that becomes important here. Now, when he was first confronted with this... Could I just ask you, I mean, if we're looking at the BIA's decision, I mean, that isn't the first thing the BIA relied on, right? I mean, the first thing it seems that the BIA relied on is, it says, importantly, the immigration judge offered specific cogent reasons for her disbelief. First, the immigration judge found that the respondent and his brother gave conflicting testimony about the 2003 incident. Can you show me where is the conflicting testimony? Sure. I understand the problem with the statements. Okay. But in terms of their live testimony, where is the actual conflict? Okay, so Petitioner's brother is testifying on page 193 to 194. And at that point, Petitioner's brother is confirming that this incident, where he was punched in the nose after being told that the police would give him plastic surgery to fix his big nose, he's confirming that that incident happened to him. Now, if you compare that to Petitioner's affidavit, Petitioner's affidavit... I'm asking about the live testimony. The live testimony. Because we know that there's a problem with the Petitioner's affidavit. So the live testimony... I'm sorry, I'm just trying to find the page numbers here. I mean, I assume this could be important because it's the very first reason that the BIA cites for upholding the FAA's... And it certainly is. And I recall what you're saying where you're saying, well, perhaps that could be that he could have been testifying consistently with his brother because he ends up saying at that portion, and I apologize, I don't know the exact page number, but he does eventually say in that statement when he says, well, okay, during the time that you're getting punched, what's happening to your brother? And he says the same thing. However, it's really important to note that Petitioner is required to be testifying in consistency with his own affidavit as well. So either Petitioner at that point... Right, but we have this issue with his... There's this possibility that the affidavit was wrong, at least a possibility that the affidavit was wrong for reasons unrelated to the Petitioner's credibility. But you're saying we have to look at the BIA's decision. And the first reason that the BIA gives for upholding the adverse credibility determination is that there is this conflict between, appears to be a conflict between their live testimony. And I just didn't see anything in Mnuchin's testimony that is inconsistent with the idea that he was the one who first saw his brother hit and then he objected and then he was knocked over. Okay, I do see that amount of time. May I continue to answer your question? Okay, so Petitioner, he is testifying before his brother is testifying. He first gives the story where he's being punched. And then he's asked, what about your brother? So at that point... But there was no discussion about who was hit first or anything like that. He says, my brother was hit and I was hit. And then the brother says, I was hit and I didn't see what happened to him because I was knocked out. And I don't see how those two things are inconsistent. I agree with you that it is plausible that Petitioner was testifying consistently. It's not compelling that he was testifying consistently with his brother. But the question is if that was an error and if there are other errors. I mean, I think we all agree that the IJ at least committed some other errors, even the BIA agreed. I mean, so that was the first thing the BIA cited. And arguably that was an error to say that they testified inconsistently at the hearing. And then there are other errors throughout the IJ's ruling. How can we be confident that a reasonable immigration judge would have reached the same conclusion about Mnookin's credibility absent all of those errors? Well, we have to go back to the standard of review here, and it's compelling evidence. We need to have compelling evidence that the board made an error, not that the immigration judge made an error, but the board made an error. And here we have several areas where substantial evidence does support their reasoning. And as long as substantial evidence supports at least one of the reasons given, and here there are several, then this court must uphold the board's decision. Regarding that particular incident, so the board and the immigration judge give Petitioner the benefit of the doubt and assume that he was testifying consistently with his own affidavit. And in that way, they're assuming that he at that point was testifying inconsistently with his brother. Perhaps he was testifying inconsistently with his affidavit, but he never claimed that he was, even after he was aware that the similarities were at issue. So just assuming that Petitioner was doing what he was supposed to do in order to fulfill his burden by testing consistently with his own affidavit, then that is true that the testimony was in conflict. Judge Chavria also asked you if we had reason to think that his own affidavit might be incorrect for reasons other than his credibility. And that was early in the question, so you haven't really addressed it. Do you have a response to that idea? Whether or not there were other reasons why the... So Petitioner has never stated another reason. His brother blamed the translation. However, since his brother was the one who testified in court that he was the first one hit, it seems as though his declaration was translated correctly. Now, PAL has stated, this court's decision in PAL, has stated that once a petitioner is found to be not credible, when he appeals that decision to the board, that's sufficient notice that he needs to explain why he was credible in all areas, not just the areas that the immigration judge remarks upon. And he never stated anything beyond, I think, that I should have been allowed to change my affidavit after I was aware of this. Did he ever identify the translation as what he wanted to change or what about the affidavit he would have wanted to change? He did not, not in that appeal. And he didn't ever ask for a continuance to go get the translator as they did in RKK. And just to go back to the standard review, we would have to find that there was compelling evidence in the record that he was credible. Yes. Well, unless do you agree that if we can't be confident that absent the errors, I'm not asking you to adopt a lot of assumptions. But if we conclude that there are a number of errors in the BIA's upholding of the adverse credibility determination, do you agree that the rule is that if we can't be confident that the same result would have been reached absent the errors, then we should remand it? Unfortunately, no, because the compelling evidence standard is that no reasonable person, no reasonable fact finder would have found this. So even if you wouldn't have found the same way, even if there are plausible explanations that aren't addressed by the board, that's not enough. This court needs to find that none of the reasons that the board supplied were supported by substantial evidence and that there's compelling evidence that this person was credible. Thank you. Okay, thank you. We let her go over time, so we'll give you two minutes for rebuttal. Isn't the problem here that Mnookin just had a really terrible lawyer in the proceedings below? Not here, in the proceedings below. I mean, I wasn't that lawyer. I made sure that that was the case before I asked the question. But, I mean, this lawyer just failed to identify this inconsistency and failed to address it after it became a big issue in the proceedings. And it may be that a lot of that is what drove the immigration judge in her adverse credibility determination. But is there anything we can do about the fact that Mnookin had such a terrible lawyer that he didn't deal with this obvious problem? Well, I haven't addressed anything, and nothing has been brought up in the briefs. I wasn't the briefing attorney. I've been retained to do oral arguments here, and nothing about ineffective assistance of counsel has been brought up in any of the earlier briefs. However, and I don't have an opinion as to whether or not the representation was ineffective. That possibly could be the case. But in matter of RKK, though, the onus is placed directly on the judge, especially in the first prong, that the judge should identify the similarities between the documents or other evidence under consideration and notify the applicant of the similarities that need to be explained. And that was not done, regardless of whether the attorney explained it, didn't explain it, or asked for a continuance. I don't think that's the test that's put before us in matter of RKK. So just on that alone, I think this court is justified in remanding the matter under RKK and also granting the petition notwithstanding RKK because the judge made a bad decision on credibility in this matter. And the petitioner then was not allowed to explain the problems that the judge did not identify as the judge was required to do under RKK.  Thank you.
judges: Schroeder, Friedland, Chhabria